DOMENICO ALBANO and Another, as Administrators, etc., of CHRISTOPHER ALBANO, Deceased, Respondents, *v.* MEDITERRANEAN STEVEDORING COMPANY, INC., and Another, Appellants, Impleaded with JOHN T. CLARK & SON, INC., Defendant.

Second Department, December 5, 1924.

Ships and shipping — action to recover for death of plaintiffs' intestate — intestate, stevedore, employed by one of defendants, was loading coal on ship belonging to other defendant — intestate started to walk on skid from doorway of ship to dock — skid tilted and intestate fell into water and was drowned — ownership of skid is immaterial — shipowner placed skid in position for ingress and egress by employees of stevedoring company — stevedoring company adopted use of skid — jury was justified in finding that skid was defective.

In an action to recover for the death of plaintiffs' intestate, a stevedore employed by one of the defendants to load coal on a ship belonging to the other defendant, who while walking on a skid from the ship to the dock was thrown into the water by the tilting of the skid and drowned, the verdict of the jury in favor of the plaintiffs is sustained by the evidence though the ownership of the skid by either of the defendants was not established, a fact which is immaterial, since it appears from the evidence that the skid was placed in position by the steam-

ship company for the use of the employees of the stevedoring company as a means of ingress and egress by its employees and its use was adopted by the stevedoring company, and that the skid which was composed of three planks was defective in that one of the planks did not rest upon the sill of the doorway in the ship.

APPEAL by the defendants, Mediterranean Stevedoring Company, Inc., and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 10th day of April, 1924, upon the verdict of a jury for $10,000, and also from two separate orders, entered in said clerk's office on the 28th and 30th days of April, 1924, respectively, denying the appellants' motions for a new trial made upon the minutes.

By direction of the court the jury in addition to their general verdict against the appellants also rendered special findings but judgment thereon was denied with an exception.

*Paul Koch* [*A. G. Maul* with him on the brief], for the appellant Mediterranean Stevedoring Company, Inc.

*Richard Reid Rogers,* for the appellant Panama Railroad Company.

*William S. Butler* [*James A. Gray* with him on the brief], for the respondents.

KAPPER, J.:

Action to recover damages for death caused by alleged negligence. It was brought against the three defendants named, but a verdict was directed in favor of the defendant John T. Clark & Son, Inc., and the jury found against the two defendants appealing. The decedent was eighteen years old at his death, and was employed by the defendant Mediterranean Stevedoring Company, Inc., a contracting stevedore, in the work of loading the bunkers of the steamship *Colon* with coal, said vessel being, at the time, owned and operated by the appellant Panama Railroad Company. This operation seemed to be carried on in the night time, and the work occupied two full days, at the end of which, or about seven o'clock in the morning of the third day, the intestate, with his fellow-workmen, about ten in number, left the ship to go to the dock alongside of which the ship was moored. The method of loading the ship with coal was to take it from a lighter lying on the off shore side, so that nothing in connection with the actual operation of coal loading was concerned in the accident.

What is involved here as the basis of negligence was the use of a runway called a " skid," which ran from the dock to a doorway or opening in the side of the ship and which furnished a means of ingress and egress to and from the ship and dock. The claim of

the plaintiffs may be briefly stated as follows: That this " skid " was composed of three planks each twelve inches in width, that such three planks made it too wide to rest on the sill of the ship's doorway, and to make it fit and rest there, one of the planks had been sawed off and shortened about three feet so that only two of the planks rested on this sill while the two full-length planks and the shorter one that had been sawed off rested with their three further or other ends on the dock. These are undisputed facts.

It is also the contention of the plaintiffs that this " skid " was an unsafe way or walk, and that the decedent while using it was caused by its tilting or moving to be precipitated, or to fall, from it to the water, where he was drowned, his body being recovered about four days later.

As I view the record, the issues were as follows:

(1) Could the jury have found that the defendant shipowner, the Panama Railroad Company, furnished the " skid " as a means of access to the ship for the use of the decedent and his fellow-workers?

(2) Had the employer of the decedent, the defendant Mediterranean Company, adopted the " skid " as a means of ingress and egress for the use of its employees?

(3) Was this " skid " in a defective condition, so that when the decedent stepped on it there was a tilting or movement of it which caused him to be thrown or fall into the water?

Appellant shipowner claims that there was another means of ingress and egress known as the " ship's gangway," with railings on it and securely lashed to the ship, and which ran from the upper or saloon deck to the dock. There was testimony that this gangway was used " occasionally " by some of the coaling gang, but I think the jury were justified in finding that this evidence came from a hostile witness or that its use was fairly accounted for by another witness in this way, viz.: This ship's gangway led to the upper deck, and was quite some distance from the coal bunkers which were down in what was called the shelter deck, and the use of it would require the men to go around upon the upper deck to and down stairways and then past the engine rooms to reach the coal bunkers, so that those who happened to be on the upper deck might make use of the ship's gangway, while those on the deck below might use the " skid " as a quicker and more direct means of access.

I doubt whether the shipowner could be said upon the evidence to have been the proprietor of this " skid." There was testimony to the contrary, and also that it had been formerly the property of a coal contractor who made use of the dock. But, from this

same defendant's witness, we are told that the purpose of this "skid" when in use was to wheel coal to and upon the ship. It was not essential to plaintiff's case that the shipowner should have been the owner of this "skid." In so far as the liability of the master of the deceased, the Mediterranean Company, was concerned it certainly was not obligatory upon the plaintiffs to establish that the employer owned it. It suffices, in my opinion, in order that both the master and the shipowner may be held liable, that not alone were they under a duty to furnish a "way" but that they did so. The ownership of the contrivance is, therefore, immaterial.

The law was recently stated by the Court of Appeals (*Aurigemma* v. *Nippon Yusen Kaisha Co.*, 238 N. Y. 183, 187), that a shipowner is obligated to furnish a contractor's employees while working on a ship with not only a reasonably safe place in which to work while placing cargo in the hold, but also a safe means of "going to and from such place." This rule of law is also that of the Federal courts. (See *The West Ison*, 298 Fed. 940, and cases there cited.)

As to the evidence showing that the shipowner utilized this "skid" for the very purpose for which it was used at the time in question, we have at the outset the testimony of the foreman of the defendant Clark & Son (the stevedore for loading and unloading cargo) that this "skid" was cut down to make it fit the width of this particular port opening. One of the ship's officers had seen the "skid" in this very doorway and in place while the coal loading was going on; had seen the coal workers using it on other occasions; had seen the cargo stevedores using it as a way; and also had seen the ship's crew using it for the removal of garbage and ashes from the ship to the dock.

There was explicit testimony that the coal gang did not place this "skid" in position for their use; but that the "*sailors put on that skid*," thus I think fairly well establishing that the shipowner had intended by means of the "skid" to comply with the law regarding its duty to furnish ingress and egress, and on that point, which is practically the only point seriously urged by the appellant shipowner, the verdict should not be disturbed.

As against the appellant Mediterranean Company liability is equally, if not more clearly made out, provided there was a defect in the "skid" which I shall shortly consider.

It is unnecessary to refer more fully to the testimony showing the connection of the employer of the decedent with the user of this "skid." The evidence abundantly shows that it was used as a way to get in and out of the ship by the employees of that defendant.

Under the authority of *Miller* v. *Boyer's Sons Company,* decided by us (206 App. Div. 708; affd., 237 N. Y. 541), I think the question of the master's use of this skid as comprehending liability, if it were defective, was a question of fact. In the *Miller* case, the stevedore was held by us for having *adopted* a ladder to be used by its employees as a means of access to and from a steamer and a lighter, on which boats the stevedore was working. The ladder was owned by the shipowner, but the jury (and not the court) exculpated the shipowner upon the ground that the ladder was not furnished by the latter as a means of access, but was placed by one of the ship's officers in its particular position for his own personal use.

Holding, therefore, that the " skid " was furnished and supplied by the shipowner for the use of the employees of the stevedore and that the latter adopted it for such user, the next issue to be discussed is whether or not this " skid " was in a dangerous or defective condition. On this point we have seen from the description of its construction (somewhat more clearly defined by the exhibits) that with a third of its width out for a portion of its length and but two-thirds or the remaining two planks of it alone resting at the doorway of the ship, the jury was justified in finding that there was a lack of stability and a tilting or listing reasonably to be expected if a workman inadvertently stepped upon the shortened plank.

Eye-witnesses to the accident testified to the decedent's movements. One of them noticed him coming out from the doorway, and saw him " put his foot on the skid, I saw him go this way and that way and he fell towards the rear of the ship; as I saw that, I cried out to the people and we ran over there trying to help him, but he didn't come to the surface any more; we went under the dock from a plank there and so forth, trying to do something; the only thing we saw was the cap but not the person. Q. You say when he put his foot on this thing he swayed and fell; did he fall to the right or left as he went off the ship? A. Well, I could not say exactly how that was done because the current makes the ship make different movements." Another witness made it a little clearer, as follows: " What I saw is this: This young man was coming out from that opening in order to come on the dock and as he put his foot on the skid, *the skid made a little movement and the movement of that skid, he lost his equilibrium.* Q. What happened? A. Then he fell down. Q. What part of the skid was he at, up at the part near where it rested on the ship, in the middle or down near the dock? A. The part nearest to the ship."

The construction of the "skid," plus the description of what happened as given by the witnesses, made it, in my opinion, a question of fact whether the skid was a reasonably safe means of ingress and egress to and from the ship and dock, and that with the jury's conclusion we should not interfere.

The claim of error in the refusal to charge certain requests advanced by the appellant Panama Railroad Company alone, has been examined and is deemed without substantial merit.

I advise that the judgment and orders denying motions to set aside the verdict and for a new trial be affirmed, with costs.

Present — KELLY, P. J., RICH, MANNING, YOUNG and KAPPER, JJ.

Judgment and orders unanimously affirmed, with costs.